UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN MICHAEL SMITH, | Case No. 1:21-cv-00481-CDB (SS) |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING ACTION FOR FURTHER PROCEEDINGS UNDER SENTENCE FOUR OF 42 U.S.C. § 405(g)** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | (Doc. 15) |

Plaintiff John Michael Smith ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income ("SSI"). (Docs. 1, 15). Defendant filed an opposition to Plaintiff's brief. (Doc. 21). The matter is currently before the Court on the Administrative Record (Doc. 10) and the parties' briefs, which were submitted without oral argument.[1]

## I. BACKGROUND

On March 23, 2018, Plaintiff filed an application for SSI, alleging disability beginning January 1, 2021. (Administrative Record ("AR") 19, 68-69). The claim was initially denied on June 28, 2018, and upon reconsideration on September 14, 2018. (AR 19, 68,96). Thereafter, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (AR 19). The hearing was held via telephone on June 10, 2020, due to the extraordinary circumstances presented by the COVID-19 pandemic. *Id.* Plaintiff was represented by counsel at the hearing. A

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge and this action has been assigned to the undersigned for all purposes pursuant to 28 U.S.C. 636(c)(1). (Doc. 10).

1    vocational expert ("VE") also appeared and testified during the hearing. The ALJ issued a

2    decision denying Plaintiff's claim for benefits on June 30, 2020. (AR 5, 18). Plaintiff sought

3    review from the Appeals Counsel, which then affirmed the ALJ on September 23, 2020. (AR 5).

4    On February 13, 2021, the Appeals Counsel granted Plaintiff a 35-day extension to file a civil

5    action. (Doc. 1 ¶9; AR 1). Plaintiff initiated this action on March 22, 2023. (Doc. 1).

6         The ALJ conducted the five-step disability analysis and made the following findings of

7    fact and conclusions of law in his decision. (AR 21-29).[2]  At step one, the ALJ found that Plaintiff

8    had not engaged in substantial gainful activity since March 23, 2018. (AR 23). At step two, the

9    ALJ found that Plaintiff's schizoaffective disorder, depressive disorder, and polysubstance

10   (marijuana and methamphetamine) abuse disorders were severe impairments. *Id.*

11        At step three the ALJ found that Plaintiff's mental impairments, considered individually

12   or in combination did not meet or medically equal the criteria of listings 12.04 (depressive,

13   bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). The ALJ

14   analyzed the "paragraph B" criteria under 20 C.F.R., Part 404, Subpart P, Appendix 1.[3]  The ALJ

15   found that Plaintiff had a mild limitation in understanding, remembering or applying information.

16   (AR 24). Plaintiff also has a moderate limitation in interacting with others; concentrating,

17   persisting, or maintaining pace; and adapting or managing oneself. *Id.*  The ALJ found that

18   Plaintiff did not satisfy the paragraph B criteria as his mental impairments did not cause at least

19   two "marked" limitations or one "extreme" limitation. *Id*. The ALJ also considered whether

20   Plaintiff satisfied the "paragraph C" criteria, finding that "[i]n this case, the evidence fails to

21   establish the presence of the 'paragraph C' criteria." *Id*.

22        [2] The ALJ's decision is summarized to the extent it is relevant to the issues brought for
23   review by Plaintiff.

24        [3] The "paragraph B criteria" evaluates mental impairments in the context of four broad
     areas of functioning: (1) understanding, remembering, or applying information; (2) interacting
25   with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing
     oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The severity of the limitation a claimant has in
26   each of the four areas of functioning is identified as either "no limitation," "mild," "moderate,"
     "marked," or "extreme." *Id*. To satisfy the paragraph B criteria, a claimant must have an
27   "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in
28   at least two of the areas of mental functioning. *Id*.

The ALJ further determined Plaintiff's residual functional capacity ("RFC") as follows:

> . . . [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: no climbing ladders, ropes, and scaffolds; no exposure to moving mechanical parts and unprotected heights. He is limited to work uncomplicated enough to learn within 30 days and no hourly quotas/conveyor belts. He is limited to occasional, simple workplace changes. He is limited to occasional interaction with co-workers and supervisors. He is limited to no public interaction or work in the vicinity of the public.

(AR 25).

At step four, the ALJ considered Plaintiff's symptoms and the extent to which those symptoms could be accepted as consistent with the objective medical evidence and other evidence on the record. (AR 25 citing 20 C.F.R § 416.929 and SSR 16-3p). The ALJ examined Plaintiffs allegations of schizoaffective disorder and depressive disorder. (AR 25 citing AR 254). At the hearing, Plaintiff testified that he is in a transient living situation. (AR 41). Plaintiff previously worked at temporary job agencies, but the voices in his head and visions caused him to believe that his co-workers were trying to hurt him. Plaintiff further testified that he hears auditory hallucinations daily, and while medications minimize the hallucinations, they are unable to stop them completely. Plaintiff also testified that the voices make it difficult for him to interact with others. (AR 25).

The ALJ also summarized Plaintiff's medical record. (AR 26). During a consultative examination on June 11, 2018, by Megan Stafford, Psy.D. ("Dr. Stafford") Plaintiff reported that he had used methamphetamine since he was 18 up until 2017. (AR 373). Plaintiff also drank alcohol daily for 10 to 15 years but had been sober since 2015. *Id*. Dr. Stafford reported that Plaintiffs mood appeared euthymic, and that his affect was restricted. *Id*. Plaintiff reported that he was on Clonidine, Remeron and Lamictal. (AR 404-5). Plaintiff also stated he has difficulty controlling his anger and previously had been arrested for possession of a controlled substance, grand theft auto, assault with a deadly weapon and attempted murder. (AR 372). Plaintiff reported paranoia and anxiety, which resulted in panic attacks and caused him to quit his prior job. (AR 372-73).

The ALJ found that Plaintiff's statements about the intensity, persistence, and limiting

1    effects of his symptoms and his allegations of disabling schizoaffective and depressive disorder

2    were inconsistent with the record.  (AR 26).  In doing so, the ALJ acknowledged Plaintiff's

3    behavioral health facility admission and history of mental health treatment and noted that

4    following treatment and adjustment in medication, Plaintiff's symptoms had improved.  *Id*.  The

5    ALJ noted that Plaintiff's memory was intact and his thought process was logical, which made

6    him capable of work uncomplicated enough to learn within 30 days with restrictions of no hourly

7    quotas/conveyor belts and only occasional, simple workplace changes. (*Id.* citing AR 373-74,

8    396, 477).  However, the ALJ further found that due to Plaintiff's poor coping and impulse

9    controls, his difficulty controlling anger, and his irritable mood, Plaintiff is limited to occasional

10   interaction with co-workers, supervisors, and no public interaction or work in vicinity of the

11   public.  (*Id.* citing AR 372, 401, 424, 477).

12          The ALJ found that DDS Doctors J. Collado and Anna M. Franco's opinions were

13   persuasive.  They opined that Plaintiff could understand/carry out simple one-to-two step tasks,

14   maintain concentration/persistence throughout a normal workday, interact with co-workers and

15   supervisors adequately but would have difficulty dealing with the public. (AR 27 citing 77, 93).

16   The ALJ deemed those findings to be supported by the record and consistent with Plaintiff's

17   noted difficulty controlling his anger, his withdrawn manner, his intact memory and ability to

18   follow simple commands. (AR 27 citing 374, 396, 401, 525).

19          The ALJ also found Dr. Stafford's opinion to be persuasive.  Dr. Stafford opined that

20   Plaintiff could perform detailed and complex tasks, accept instructions, perform work activities

21   consistently without additional instructions, and to maintain regular workplace attendance.  (AR

22   26 citing AR 375). Plaintiff displayed a moderate impairment in his ability to interact with others

23   as well as moderate impairment to complete a normal workday without interruptions and to deal

24   with usual workplace stress. (AR 375).

25          At step five, the ALJ found that there are jobs that exist in significant numbers in the

26   national economy that Plaintiff could perform, specifically: kitchen helper, office helper, and

27   document preparer/doc specialist.  The ALJ accordingly found that Plaintiff was not disabled.

28   (AR 29).

4

## II.  LEGAL STANDARD

### A.    The Disability Standard

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled."  42 U.S.C. §§ 402(d)(1)(B)(ii) and 1381(a).  An individual is "disabled" if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment …"[4]  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  To achieve uniformity in the decision-making process, the Social Security regulations set out a five-step sequential evaluation process to be used in determining if an individual is disabled.  *See* 20 C.F.R. § 404.1520; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1194 (9th Cir. 2004).  Specifically, the ALJ is required to determine:

> (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe" impairments, (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the RFC to perform past relevant work and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level.

*Stout v. Comm'r. Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on a claimant at steps one through four.  *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citing *Valentine v. Comm'r of Soc. Sec. Admin*, 574 F.3d 685, 689 (9th Cir. 2009)).

Before making the step four determinations, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e).  The RFC is the most a claimant can still do despite their limitations and represents an assessment based on all relevant evidence.  20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1)).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2).  *E.g.*, *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013) ("These regulations inform us, first, that in

---

[4] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrated by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

1   assessing the claimant's RFC, the ALJ must consider the combined effect of all of the claimant's

2   medically determinable impairments, whether severe or not severe.").  The RFC is not a medical

3   opinion.  20 C.F.R. § 404.1527(d)(2).  Rather, it is a legal decision that is expressly reserved to

4   the Commissioner.  20 C.F.R. § 404.1546(c); *see Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th

5   Cir. 2001) ("[I]t is the responsibility of the ALJ, not the claimant's physician, to determine

6   residual functional capacity.").

7       At step five, the burden shifts to the Commissioner to prove that Plaintiff can perform

8   other work in the national economy given the claimant's RFC, age, education, and work

9   experience.  *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).  To do this, the ALJ can use

10  either the Medical-Vocational Guidelines or rely upon the testimony of a VE.  *Lounsburry v.*

11  *Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th

12  Cir. 2001).  "Throughout the five-step evaluation, the ALJ 'is responsible for determining

13  credibility, resolving conflicts in medical testimony and for resolving ambiguities.'"  *Ford*, 950

14  F.3d at 1149 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

15      **B.     Standard of Review**

16      Congress has provided that an individual may obtain judicial review of any final decision

17  of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In

18  determining whether to reverse an ALJ's decision, a court reviews only those issues raised by the

19  party challenging the decision.  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  A

20  court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on

21  legal error or are not supported by substantial evidence.  *Tackett v. Apfel*, 180 F.3d 1094, 1097

22  (9th Cir. 1999).

23      "Substantial evidence is relevant evidence which, considering the record as a whole, a

24  reasonable person might accept as adequate to support a conclusion."  *Thomas v. Barnhart*, 278

25  F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453,

26  1457 (9th Cir, 1995)).  "[T]he threshold for such evidentiary sufficiency is not high."  *Biestek v.*

27  *Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Rather, "[s]ubstantial evidence means more than a

28  scintilla, but less than a preponderance; it is an extremely deferential standard."  *Thomas v.*

1   *CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted).

2       "[A] reviewing court must consider the entire record as a whole and may not affirm

3   simply by isolating a specific quantum of supporting evidence."  *Hill v. Astrue*, 698 F.3d 1153,

4   1159 (9th Cir. 2012) (internal quotations and citations omitted).  "If the evidence 'is susceptible

5   to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'"  *Ford*,

6   950 F.3d at 1154 (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).  Even if the

7   ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  *Stout*,

8   454 F.3d at 1055-56.  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

9   nondisability determinations."  *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008)

10  (quotation and citation omitted). The burden of showing that an error is not harmless "normally

11  falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396,

12  409 (2009).

13                              **III.  DISCUSSION**

14      Plaintiff advances two issues for the Court's review.  First, Plaintiff claims that the ALJ

15  failed to adequately consider whether his mental condition met or equaled a listed impairment for

16  which a disability finding is established at step three of the sequential analysis.  Second, Plaintiff

17  claims that the ALJ erred by rejecting his subjective testimony regarding his mental symptoms.

18  (Doc. 15 p. 2).

19          **A.      Whether the ALJ Erred at Step Three**

20      Plaintiff contends that the ALJ erred at step three by failing to conduct an adequate

21  analysis relating to Plaintiff's impairments.  (Doc. 15 p. 23-24).  Plaintiff specifically contends

22  that when the ALJ evaluated whether his impairments met or equaled an affective disorder under

23  Listing 12.04 and/or an anxiety disorder under listing 12.06, he did not properly analyze the

24  "paragraph C" requirements detailed in 20 C.F.R. Part 404, Subpt. P, App. 1 §§ 12.04 or 12.06.

25  To be found disabled under these listings, Plaintiff's mental disorder must satisfy the requirement

26  of both paragraphs A and B, or the criteria in paragraph C.

27      To satisfy the "paragraph C" criteria, a plaintiff must provide evidence that his mental

28  disorder is "serious and persistent." 20 C.F.R. Pt. 404, Subpt. P, App.  1.  A mental disorder is

                                        7

"serious and persistent" if "there is a medically documented history of the existence of the mental disorder in the listing category over a period of at least 2 years, and evidence shows that [Plaintiff's] disorder satisfies [two conditions]." *Id*.

The first condition is that the evidence shows that the Plaintiff relies on medical treatment, mental health therapy, psychosocial support, or a highly structured setting on an ongoing basis to diminish the symptoms and signs of his mental disorder. The second condition is that despite the diminished symptoms and signs from the treatment, the claimant has only achieved marginal adjustment, which means that the claimant nevertheless has minimal capacity to adapt to changes to their environment or to demands that are not already part of their daily life. *Id*.

Plaintiff claims that the ALJ's summary conclusion that he did not meet the "paragraph C" criteria was legally insufficient. (Doc. 15 p. 24). At step three, the ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment fails to meet the listing. *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). Plaintiff further claims that the ALJ's conclusion is contrary to the evidence in the record. He argues that his schizoaffective disorder has been ongoing for more than two years and that he deteriorates when not provided with substantial psychosocial support. (Doc. 15 p. 25 citing AR 351-52, 363, 514).

"For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment.*" Sullivan v. Zebley*, 493 U.S. 521, 531 (1989) (citing 20 C.F.R. § 416.926(a)). Plaintiff points to his repeated episodes of decompensation after release from his February 2018 one-year treatment program at Turning Point, including mental health interventions while he was in jail twice in 2019 and a 10-day psychiatric hospitalization in or around September 2019. (AR 490-499, 500-503, 509). He further asserts that in October 2019, he began another one-year treatment plan at Turning Point where he was assessed as "belligerent, threatening, uncooperative, aggressive" with auditory and visual hallucinations, paranoia, depression, irritability, and anxiety. (AR 507-

518).  Plaintiff claims that the record supports a finding that his mental health deteriorates when he is not provided substantial psychosocial support and thus should meet the "paragraph C" criteria.  (Doc. 15 p. 25).

Although the ALJ summarily found that the evidence failed to establish the presence of the "paragraph C" criteria, "[a]n Adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." *Matthew W. v. Kijakazi*, No. 1:21-cv-03070-MKD, 2023 WL 2558148, at *6 (E.D. Wash. Jan. 3, 2023) (quoting SSR 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017)). Accord, *Lewis*, 236 F.3d at 513 ("Although he did not recite it in his decision's brief 'Findings,' the ALJ did note in his 'Statement of the Case' repeated evidence that Lewis did not comply with his prescribed treatment.").

Here, the ALJ's analysis at step four of the sequential analysis provides sufficient evidence for the Court to determine the basis of his finding of the "paragraph C" criteria.  For example, the ALJ noted that Plaintiff underwent behavioral therapy throughout 2018 and 2019 for his depression, mood instability, and anxiety. (AR 26) (citing AR 386, 390, 487, 504-22).  The ALJ further found that during a consultative examination in June 2018, Plaintiff was able to independently attend to his personal hygiene, make basic meals, displayed fair insight and judgment (AR 374, 491), which were impaired by his impulsivity and poor coping skills. (AR 26 citing AR 401, 525). The ALJ found that following treatment and medication, Plaintiff noted improvements to the severity and frequency of his suicidal ideations as well as his auditory and visual hallucinations. (AR 26 citing AR 491)  The ALJ's favorable treatment of Doctors Collado, Franco, and Stafford also informs this Court's consideration of the basis for the paragraph C finding. These doctors found that Plaintiff did display social imitations but was nonetheless able to work a normal workday and associated stresses with some moderate impairment.  (AR 27) *see* (AR 474-75, 77, 85).

The Court concludes the ALJ's finding that Plaintiff did not meet the "paragraph C" criteria to be supported by substantial evidence in the latter parts of his ruling and by the record.

1    Accordingly, the Court finds no error at step three of the sequential analysis.

2          **B.      Whether the ALJ Erred by Failing to Provide Specific, Clear and Convincing**

3                    **Reasons to Reject Plaintiff's Testimony**

4          Plaintiff's next challenges the ALJ's consideration of his subjective symptom allegations.

5    He claims that the ALJ did not provide "specific, clear and convincing reasons" to reject his

6    statements about the severity of his symptoms and their impact on his ability to work. (Doc. 15 p.

7    27).

8          "In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ

9    must engage in a two-step analysis." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)

10   (citation omitted). The ALJ must first determine whether the claimant has presented objective

11   medical evidence of an underlying impairment which could reasonably be expected to cause the

12   severity of the symptoms the claimant alleges. *Id.* The claimant does not need to show that her

13   impairment "could reasonably be expected to cause the severity of the symptom she has alleged;

14   she need only show that it could reasonably have caused some degree of the symptom." *Id.*

15   (quotation and citation omitted). If the claimant meets this first step, and there is no evidence of

16   malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms

17   if the ALJ gives "specific, clear and convincing reasons" for the rejection. *Id.* (quotation and

18   citation omitted).

19         The ALJ may consider numerous factors in weighing a claimant's credibility, including

20   "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,

21   prior inconsistent statements concerning the symptoms, and other testimony by the claimant that

22   appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to

23   follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen v.*

24   *Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). In evaluating the credibility of symptom testimony,

25   the ALJ must also consider the factors identified in Social Security Ruling (SSR) 16-3P.[5] *Id.*

26   (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)). *Accord Bray v. Comm'r of Soc.*

27

28         [5] *Smolen* cites to SSR 88-13, which has since been superseded by SSR 16-3P (available at 2017
     WL 5180304). *See Amy E.S. v. Commissioner*, 2022 WL 92939, at *9 n.4 (D. Or. Jan. 10, 2022).

1   *Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009).  These factors include:

> (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3P at *7. *See* 20 C.F.R. § 404.1529(c)(3).  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.  *Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'"  *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). "A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

"The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). *See also* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability solely because the objective medical evidence does not substantiate your statements.").  Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide additional reasons for discounting the testimony.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  "The ALJ must specify what testimony is not credible and identify the evidence that undermines the claimant's complaints – '[g]eneral findings are insufficient.'"  *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988)).

11

1    However, the medical evidence "is still a relevant factor in determining the severity of the

2    claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir.

3    2001).  The Court of Appeals has distinguished testimony that is "uncorroborated" by the medical

4    evidence from testimony that is "contradicted" by the medical records, and concluded that

5    contradictions with the medical records, by themselves, are enough to meet the clear and

6    convincing standard. *Hairston v. Saul*, 827 Fed. Appx. 772, 773 (9th Cir. 2020) (quoting

7    *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008)).

8    Here, the ALJ's ruling summarized Plaintiff's subjective symptom testimony as follows:

9
10
11
12
13

> The claimant alleged schizoaffective disorder and depressive disorder.  [AR 254].  At the hearing he testified to a transient living situation.  He testified that he previously worked at temporary job agencies; however, voices in his head and visions cause him to believe that his co-workers were trying to hurt him.  He testified that he hears auditory hallucinations daily.  He testified that the medication does minimize the hallucinations but does not stop them completely.  He testified that these voices make it difficult for him to interact with others.

14    (AR 25).  The ALJ acknowledged that Plaintiff had a history of health facility admission, as well

15    as a history of mental health treatment, which both improved his symptoms.  (AR 26 citing AR

16    490-94; 386, 390, 407; 487; 504-522). The ALJ further found that in addition to Plaintiff's

17    improvements, Plaintiff's memory and thought processes enabled him to work uncomplicated

18    jobs with certain limitations. (AR 26 citing 373-74; 377- 86, 477). The ALJ also found that due to

19    his symptoms, Plaintiff was limited to occasional interaction with co-workers, supervisors, and no

20    public interaction or work in the vicinity of the public. *Id.* (citing AR 372-73, 401; 525, 477).

21    Plaintiff argues that the ALJ failed to link portions of the record to demonstrate which of

22    Plaintiff's statements were undermined by the record. (Doc. 15 p. 28, citing *inter alia Holohan v.*

23    *Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)) (holding that an ALJ "must specifically identify

24    the testimony she or he finds not to be credible and must explain what evidence undermines that

25    testimony.")  The ALJ's ruling does identify Plaintiff's subjective statements and does point to

26    portions of the record that purportedly undermines them.  As set forth above, the ALJ

27    acknowledged Plaintiff's testimony that he experienced auditory hallucinations, which cause him

28    to believe that his co-workers are trying to hurt him.  (AR 25).  He further noted Plaintiff's

testimony that the medication he takes diminishes the hallucinations but does not stop them completely.  (AR 25).  However, Plaintiff correctly points out that many of the ALJ's citations do not lend any support to his conclusion that his symptoms have significantly improved.  For example, some of the ALJ's citations reference a Turning Point treatment plan submitted by Rochelle Smith on March 14, 2018.  (AR 384, 390, 487).  The citations reference only to the treatment plan's objectives to reduce Plaintiff's symptoms, but the treatment plans do not comment whether Plaintiff had experienced any improvement.  (AR 384-88; 390).

Likewise, the ALJ cites to treatment notes by Sarina Singhi on June 19, 2018.  (AR 407).  The treatment notes state that Plaintiff reported no change in his hallucinations or paranoia.  Plaintiff further reported that his Clonidine was not helping.  (AR 407).  The treatment notes further reported that "[t]he meds helped with sleep, nothing else." *Id*. The Court is unable to discern, and the ALJ's ruling provides no explanation regarding how these treatment notes from Turning Point are evidence that Plaintiff's symptoms have been improving with treatment.

Another of the ALJ's citations refers to a Turning Point treatment plan which was submitted on October 30, 2019, by Patricia Castillo.  (AR 506-515).  The treatment plan reported that Plaintiff was at a high risk of decompensation; however, the plan stated that Plaintiff's report of paranoid delusions and hallucinations sounded rehearsed, and the drafter suspected that he was malingering. (AR 513, 515).  The ALJ's reliance on this report is further cast in doubt by another report drafted on January 21, 2020, indicating that Plaintiff relapsed into methamphetamine abuse three to four days earlier and once again reported hallucinations and delusions. (AR 522).  The ALJ's ruling does not explain how this treatment plan credibly undermines Plaintiff's symptom testimony.

However, at least one portion of the record relied upon by the ALJ does apply generally to his discounting of Plaintiff's testimony.  In particular, the ALJ cited a discharge summary by Dr. Nicholas Bechel, D.O. ("Dr. Bechel"), authored on September 4, 2019.  (AR 490-493).  According to Dr. Bechel, Plaintiff was admitted to Community Health Centers on August 26, 2019, and discharged on September 4, 2019.  (AR 490).  The report states that Plaintiff was seen daily for treatment and that "[i]nitially he was very withdrawn, minimally interactive with staff

and peers. However, he noted improvement to severity and frequency of suicidal ideations as well as auditory and visual hallucinations." (AR 491). The report further noted that Plaintiff's hallucinations had nearly dissipated entirely and that he denied receiving commands from his hallucinations. *Id.*

Although Dr. Bechel's treatment notes do support the ALJ's conclusion that Plaintiff's symptoms improved, the brief period of recovery pointed out by the ALJ (less than one week) does not constitute clear and convincing evidence to reject Plaintiff's allegations. Where mental issues are concerned, "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment." *Garrison*, 759 F.3d at 1017. An ALJ provides clear and convincing reasons for disregarding a claimant's subjective symptom testimony by charting a course of improvement through description of symptoms, course of treatment and bouts of remissions. *Id.* at 1018. In contrast, an ALJ commits error when they isolate a few short-lived periods of temporary mental health improvements as evidence that undermines their subjective testimony. *Id.* Here, although the ALJ did provide a detailed overview of Plaintiff's medical history, "providing a summary of medical evidence . . . is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." *Lambert v. Saul*, 980 F.3d 1266, 1277-78 (9th Cir. 2020) (quoting *Brown-Hunter*, 806 F.3d at 494).

Out of the record citations referenced by the ALJ, only Dr. Bechel's discharge notes arguably undermined Plaintiff's symptom testimony by noting improvements after a short bout of treatment. (AR 491). This short window of improvement does not provide clear and convincing reasons for discounting Plaintiff's testimony regarding his hallucinations and paranoia. The Court is unable to discern the ALJ's path because he merely made a credibility finding relating to Plaintiff's improvements without further explanation as to how his citations contradicted Plaintiff's testimony. *Brown-Hunter*, 806 F.3d at 494. Although the ALJ provided a detailed summary of the medical record, his ruling does not provide an explanation as to how certain parts of the administrative record undermine Plaintiff's subjective symptom testimony. Nor does the ALJ's ruling chart a course of improvement, but instead, summarily concludes that Plaintiff's symptoms have improved without adequate explanation supported by the record. The ALJ is

1  required to point to specific facts in the record to support a finding of lack of credibility and this

2  Court neither may accept general findings or unspecified conflicts nor comb the administrative

3  record to find specific conflicts.  *Vasquez*, 572 F.3d at 592; *Burrell*, 775 F.3d at 1133.

4          The ALJ's error of discounting Plaintiff's testimony without an adequate basis for support

5  warrants remand as the Court cannot substitute its conclusions for the ALJ's, nor can it speculate

6  as to the grounds for the ALJ's conclusions.

7                              **IV.  CONCLUSION AND ORDER**

8          Based on the foregoing reasons, the Court finds that the ALJ did not provide clear and

9  convincing reasons for discounting Plaintiff's symptom testimony.

10         Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the

11  Commissioner of Social Security (Doc. 15) is GRANTED, the ALJ's decision is VACATED, and

12  this matter is remanded to the Commissioner of Social Security for further proceedings consistent

13  with this order.

14         The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff John Michael

15  Smith and against Defendant Commissioner of Social Security.

16  IT IS SO ORDERED.

17      Dated:   __**January 18, 2024**__

18                                                UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28